The next case for argument is 161533 Navico v. ITC. This is a case for argument 161533 Navico v. ITC. This is a case for argument 161533 Navico v. ITC. This is a case for argument 161533 Navico v. ITC. This is a case for argument 161533 Navico v. ITC. Okay, we settled. Mr. Stevens, whenever you're ready. Good morning, and may it please the court. First, the commission erred by conflating the rigorous intent requirement required of induced infringement with the knowledge requirement of contributory infringement. While the commission held that, quote, Garmin lacked the intent to infringe, end quote, this court's precedent is clear. That only proof of a defendant's knowledge, not intent, is required in order to establish contributory infringement. And that precedent is in accord with the Supreme Court's seminal case in the area. Well, let's assume that we hear but don't accept your interpretation of what the commission said. In other words, an errant phrase, but that what the commission applied was really the knowledge requirement. Where are you left with respect to your arguments on contributory? So, Your Honor, with the commission, the only reason the commission found against us as to contributory infringement that I can see from my reading is based upon the alleged good faith belief of non-infringement. So even putting aside the language they use. So that has to do with knowledge of infringement, not intent, right? I would disagree with that. I think one subjective belief necessarily goes to intent and not knowledge. I think the knowledge requirement is satisfied when you're told something, when you're informed of a claim. Whether or not you believe it, whether or not you subjectively agree with that accusation goes to intent, not to knowledge. So once Garmin was put on notice of the patents and put on notice of our claim of infringement, the knowledge requirement was satisfied. How does that juxtapose with the reading of Comel that your friend cites? Because there is language in Comel as they're not. I mean, the issue there was induced infringement. But in informing the Supreme Court's judgment as to the requirements of inducement, they talked about the knowledge requirement being the same knowledge requirement as in contributory. And that knowledge requirement being knowledge that you're infringing. Yes, Chief. Obviously, in Comel, the question before the Supreme Court was inducement, not contributory. And you're absolutely correct. The Supreme Court said the knowledge requirement is indeed the same. But then there's a separate intent requirement when it comes to induced infringement. So the language, both in Global Tech and Comel, again, neither of which was granted to address contributory infringement, I believe the language is consistent. For example, in Global Tech, the Supreme Court said, again, in dicta, but as it relates to contributory infringement, the Supreme Court said, we proceed on the premise that Section 271C requires knowledge of the existence of the patent. That's what the Supreme Court said about Arrow 2. It also said that you have to have knowledge that the action was infringing, right? Yes, Your Honor. And that's where the Arrow 2 court said, once you have a cease and desist letter. You have to have knowledge that the action was infringing if all you have is a contention from the other side that it is infringing. How can that be knowledge that you're infringing? You have been charged with that knowledge. Your subjective belief or subjective disagreement or agreement with that is a separate inquiry that comes in only under 271B and not 271C. So you're saying that's a totally different standard for inducement and contributory? By the definition of the fact that they're worded differently, yes, the standards are different. I would agree that the actual knowledge requirement is the same. For each, you must have knowledge of the patent and knowledge of the claim. But not knowledge of infringement? I don't think you have to have subjective belief that you infringed. Under the contributory provision, do you have to have knowledge that you're infringing? You have to be put on knowledge that there's a claim of infringement as to your conduct. Just a claim, not knowledge of infringement, just knowledge of a claim of infringement. You have to be told that you're infringing. Whether you subjectively disagree with that would go to 271B and not 271C. Well, I mean, there's such clear language in Como. I mean, page 9 in the slip opinion I have when they're talking about global tech and the government's pushback as it did in Como about global tech. It says qualifying or limiting its holding, as the government in Como seek to do, would lead to the conclusion, both in inducement and contributory infringement, that a person or entity could be liable even though he did not know the acts were infringing. In other words, even if the defendant reads the patent's claims differently from the plaintiff and that reading is reasonable, he could still be liable because he knew the acts might infringe. Global tech requires more. It requires proof the defendant knew the acts were infringing. Again, I don't believe that the Supreme Court meant to undo 50 years of precedent by a few sentences. Well, you're relying on ARO, and I guess maybe we have a mixed analysis of ARO. I understand that at some point in the litigation at the district court they talked about the cease and desist letter. But there, there was an opinion of counsel in ARO, but the opinion of counsel was you are infringing. I mean, there was a cease and desist letter, which I think was never referenced by the Supreme Court. But it's not the facts of these case. I mean, I'm not clear what in ARO. ARO does not say once you get a cease and desist letter, you're on notice that you might be infringing, and therefore you can be liable for contributory infringement. Well, I would have two disagreements with that. The first is I do think the Supreme Court opinion said once you receive the cease and desist letter, there is no defense to the scienter requirement of 271C. I do think that's explicitly in the opinion. In fact, I think it says the knowledge requirement affords ARO no defense with respect to sales made after January 2, 1954, which is the day they received the cease and desist letter. As to the district court proceedings, yes. But there was no argument in ARO that they were not infringing at the time they received. I mean, they didn't take the position they were not infringing in time of the cease and desist letter. Indeed, in ARO, my recollection is that they sought an opinion of counsel after they received the letter. The opinion of counsel was, yes, you are infringing, and then they proceeded to try to get a license. And failing to get a license, they decided to design a round. Am I stating the ARO facts as you would call them? Slightly differently, and I suspect you're more familiar with than I, but I'll tell you my understanding of it, which is there was design A, and yes, the lawyer said, that's no good. And the lawyer said, to avoid infringement, come out with design B. And if you really want to avoid infringement, come out with design C. And the district court found that each of designs A, B, and C infringed. So with A, you're right. They got a cease and desist letter. The lawyer agreed with it and said, you need to stop. Yeah, so of course the liability started running from that date because that was the date in which they weren't disputing. They got the notice of cease and desist lawyer, and the lawyer tells them, yep, you're infringing. Yep, they know they're infringing. But the Supreme Court affirmed the finding of contributory infringement as to designs B and C as well, where the judge said that they got the cease and desist letter. The lawyer instructed them specifically to change from design A to design B. They did so, and there was still infringement under the doctrine of equivalence. Then they switched from design B to design C, and the district judge again said, no, that still infringes. And, again, the Supreme Court, with respect to all three designs, and I give you A as a different circumstance, but with respect to all three designs, the knowledge requirement affords Arrow no defense. Okay, so maybe Arrow is confusing, but we have an explicit statement in Comell as to what the rule is, and you're asking us to disregard that as, quote, dictum. It is not our job, and we've said this in back, it is not our job to ignore what the Supreme Court tells us the rule is as dictum, right? I think it would be unwise to ignore what the Supreme Court says. I certainly agree with that. I don't think that one paragraph is particularly clear that it's being applied to contributory infringement. Yes, the paragraph starts with the analysis of Arrow and the Solicitor General's comments about that. But as the paragraph continues, I believe it's talking about the actual case and circumstance before the Supreme Court, namely induced infringement and not contributory infringement. Can I move you to the other basis for contributory, which is the non-infringing alternatives? Absolutely. Prior to the Green brief in this case, Garment had never contested that its transducers lack substantial non-infringing use. They had for its hit units, but this had never come up in the entire case. But it's your burden, isn't it, to show a lack of non-infringing alternatives? Absolutely it is. So how did you carry that burden? Well, in every brief we explained it. We cited to CX-95. We cited to CX-39. We cited to CX-40. We cited to CX-97. I've read the testimony, and it doesn't seem to me that it's clear that there are no non-infringing alternatives. What testimony is clear that there are no non-infringing alternatives? The testimony said that the only thing one could do was to plug one of these transducers into a legacy device, which would not even charge the transducer that's at issue in this case. So I don't think that's a substantial non-infringing use. The other evidence is clear that the transducers in question in this case are only compatible with a certain range of hit units. And so those are the only uses for it. Everything else would be— So you had no direct testimony that there were no substantial non-infringing uses? We had testimony of our expert. We had three documents from Garment. You had testimony from your expert that there were no non-infringing uses? Yes, we did. Where is that? In the record, it is—and I have the—I have the APPX as well. It's CX-95. It's Dr. Benson's testimony. Both the staff as well as— No, no, no, no. Where? APPX 7021. What volume of the appendix? What volume of the appendix? I can give you the appendix number. I don't know particularly which volume it is. It's APPX 7021-22. There's some other testimony. You're supposed to come to the argument with the ability to show us where to find the stuff you're referring to. What is the number? 7021-22. Volume 3. 70 what? 7021-22. I'd also note footnote 1 of our gray brief includes all the citations to every brief. No, no. That doesn't do it. I don't want to have citations read to me. I want you to show me where your witness said it. Okay. 70 what? 7021-22. 7021. Mm-hmm. And then there's also— No, no, no, no, no. Where? Okay. I have that in front of me. Where does he say that? Okay. So in question 263, he's asked about— It's question 266, right? Sure. It starts with 263 and it goes through question 266. It relates to different products. So question 265 relates to the transducers themselves. Question 266 relates to the—you're right, the transducers as well. So this was our expert's testimony in the record at APPX-4887. There's the transducer selection guide. It tells you that the only compatible HID units with these products are indeed the HID units that support the technology. And once they're mated, that's infringement right there. Before you sit down, can I ask you to address the commission's finding that certain claims of the 550 were obvious over the prior argument? Happy to, Your Honor. The commission made two errors with respect to Tucker and then made a third in combining the two. The two principal errors with respect to Tucker were, first, the math. The math dictates that the transducer in Tucker cannot possibly be a downscan transducer. The math, which has never been disputed, in fact, cited favorably in the commission opinion, dictates that at most the transducer in Tucker would have been placed with the middle of its beam 30 degrees below parallel, below the horizon. And no one's disputed that math. The commission takes a two-word phrase from the concluding paragraph out of context and somehow just walks after acknowledging the math. So you're saying their factual findings aren't supported by substantial evidence. The factual finding in that regard is not supported by substantial evidence. Okay, what else? Second, I beg your pardon? What else? Second, Garman always told the commission in the ALJ that Tucker was not a phased array. That was their position throughout their briefing. Now that we've arrived at this court, Garman in its red brief here and the blue brief from the 1572 appeal says repeatedly that Tucker is indeed a phased array. And if that's the case, it can't possibly either render obvious or anticipate because it's a different type of system. So if you accept Garman's repeated admission in the Federal Circuit briefing. But the commission didn't. They found that Tucker was not a phased array, right? I don't believe there was an explicit finding one way or the other on that. What's the third thing? The third thing would be the combination of the two. The ALJ found that Garman had waived the issue and not presented any motivation to combine Tucker and Vetz. In fact, the ALJ went further and found a reason that they would never be combined. Garman in its appeal to the commission and its petition for review, again, never presented a motivation to combine. The commission sua sponte found one, but in one sentence, citing nothing. And so that is also error in the fact that these two things are very different devices. One is huge. It has to be huge based upon its physics. It's literally over five feet long, has hundreds of pieces, has 27 pairs of wires going to it. What does that have to do with whether it comes within the claims? This has to do with the motivation to combine. It also has to do with whether it comes into claims because you need all that functionality to make it a phased array, which is why itself it's not in the claims. But putting that aside, there's also a reason why they would not be combined because there's no way to take the Tucker transducer and make it in any way work with the Vetz system. I notice my time is over, Your Honor. Okay. We'll restore everybody's time. Thanks very much. You all are splitting your time. We'll run the clock independently, so you've got eight minutes. Thank you. May it please the Court. My name is Lucy Grace Noyola, and I represent the Accolyte, the International Trade Commission. On the issue of contributory infringement… Why don't you, since we're just talking about the invalidity issue, why don't you address that? Sure. On the issue of obviousness, the Commission's substantial evidence supports the Commission's findings underlying its obvious determination as to five claims of the 5-5 OPEC. Specifically, Tucker expressly discloses rotating the axis of the acoustic beam from the horizontal to the downward vertical, and that's at APPX 5323, and returning a linear transducer vertically downwards as a vertical sounder to obtain an improved high-resolution image, and that's at APPX 5330. The Commission's findings are also supported by expert testimony as to Tucker's expressed disclosures and a motivation to combine Betz and Tucker. In addition, as part of its obviousness analysis, the Commission considered several objective indicia, and the sum of that objective indicia did not overcome the strong prima facie showing of obviousness. Tell us about the motivation. The motivation is supported in the record in two areas. First, it's in Tucker. Tucker says to rotate, to turn the linear transducer downwards to obtain a high-resolution image. That's the exact problem that the patent here was trying to resolve. The patent makes clear that it was well known that circular transducers, or traditional transducers at the time, had image quality problems. So a person having ordinary skill in the art would turn to Tucker and see that disclosure and say, look, here's something that we can do to improve the image. There's also expert testimony from Dr. Tice. He also referred to those same disclosures and said that the person of ordinary skill in the art would understand that and also find it obvious to combine Betz with Tucker. Can I turn you back to the contributory issue? Sure. I can't find it now, but somewhere I recall in the commission's opinion where it relied on staff, that there were findings below with regard to non-infringing uses. Do you recall that? I mean, what was the standing of the evidence with regard to non-infringing uses? I don't recall what it was. Your Honor was referring to, but the commission did not address the issue of substantial non-infringing uses in its opinion. Right. So even if there was evidence as to substantial non-infringing uses and even if knowledge could be presumed, that presumption is a presumption and can be rebutted with evidence to the contrary. Well, I'm reading, I think, from the commission's opinion at Appendix 34. I think I've got the right case and the right opinion. And it says in the middle paragraph, Navico challenges the ID's finding of no contributory infringement by Garmin stand-alone transducers because, according to Navico, it was based solely on ID's finding that these products do not satisfy the limitation. Navico challenge appears solely in a footnote in its petition for review and provides no analysis or evidence to support its claim of contributory infringement. What's that about? So did the commission just say waiver? So here's what happened. There were arguments that were made by the parties before the ALJ. And you'll hear the issues from Navico and Garmin. But the ALJ never reached the issue of substantial non-infringing uses. And when the matter was before the commission, Navico challenged the finding of contributory infringement but never pointed to its evidence of no substantial non-infringing uses. So therefore, we consider the matter to be waived. You can look at APPX 3116. And that's Navico's petition to the commission. And then a second brief to the commission at APPX 3352. Navico's argument challenging the ALJ's finding of no contributory infringement appeared solely in a footnote in two different briefs and was based on direct infringement only with no mention of the issue of substantial non-infringing uses. As this court seems to recognize, contributory infringement has long required a showing that the accused infringer must have knowledge and must know that the combination for which the component was especially designed was both patented and infringing. And contrary to Navico's argument, those cases, Comel and Globotech, cannot be dismissed as mere dicta. And based on the clarification provided by Comel and Globotech as to the knowledge requirement, evidence of a good faith belief of non-infringement, whether or not based on opinion of counsel, can be considered to find a lack of knowledge required for... Well, you heard your friend. Your friend says here and in the brief that notwithstanding what Comel may reference, they didn't explicitly overrule Arrow. And your friend's reading of Arrow is that because they ran the clock from the date of the cease and desist notice and because there were efforts to subsequently design around, that that in combination means that it really was the cease and desist notice that triggered the liability for contributory. Well, I disagree with Mr. Stevens, and I agree with Your Honor, that there is no indication in Arrow 2 that the Supreme Court considered the issue and the relevance of evidence of opinion of counsel as it relates to contributory infringement. There's just nothing there, and he cannot point to any rule of law that would preclude consideration of opinion of counsel or an accused infringer's belief of non-infringement to determine the knowledge required for contributory infringement. Knowledge is a question in fact, and such evidence is relevant as to the accused infringer's state of mind. Well, another issue in this particular appeal is the finding of no prospective contributory infringement. So once there's a determination that there is direct infringement and once Garmin knows that, why shouldn't at least prospectively liability run on contributory? Because Navico here proceeded on a theory of excluding the standalone transducers on a theory of contributory infringement, and it failed to establish contributory infringement by Garmin's importation and sale after importation to end users of those transducers. So the commission acted reasonably in declining to exclude the standalone transducers based on acts of contributory infringement that Navico did not prove. And contrary to Navico's argument, the commission's determination did not insulate or absolve Garmin from future acts of contributory infringement. Further commission proceedings can be held to address any acts arising after the commission's final determination. Well, the commission's decision is not a final determination until it gets affirmed on appeal. There'd be quite a different situation if it were affirmed on appeal and then the contention that there couldn't be any contributory infringement, that the knowledge was lacking at that point, right? I would say that Garmin would not be in a position to rely on the same opinion of counsel to argue the lack of knowledge required for contributory infringement. But certainly, a finding by this court would go into the analysis as to whether Garmin had the requisite knowledge for contributory infringement. And if there are no further questions... Let's hear from Mr. Groom. Thank you. Thank you. Good morning. I'd like to start with the prospective infringement, the prospective relief that is being sought here. There's a convenient place to begin. And our view would be, on behalf of Garmin, would be that you cannot take one changed fact alone. In other words, the finding that the advice of counsel was wrong and there is infringement. And from that sole fact, then say, okay, now you possess the intent. You would have to go through and look at other facts, whatever other facts may be relevant. And as the court is aware from the related appeals, there is a design around, for example, another design around. And so in our view, you cannot simply say just because it turned out that... Well, I would think your argument would be that you can't say that until you adjudicate or at least consider the non-infringing uses as well, right? I agree with that, Your Honor. And by the way, on that point, Your Honor had asked earlier, I think, whether the commission or the administrative law judge had made findings on that. There are two sets of products. There are so-called transducers and head units. And you can think of them as a bit that's under the water and a bit that's on the top of the boat. And the administrative law judge made findings that there are substantial non-infringing uses for the head unit. The administrative law judge declined to make findings, even though he was asked to, on whether there were substantial non-infringing uses for the transducers. And in our view, part of the problem that we've got here that Navico is coming to this court and saying, please make findings of fact that weren't made below, either by the administrative law judge or by the commission in its review. Let's weigh the evidence and make findings on that. That's wholly inappropriate. It was their burden to prove this. They put in what, in our view, was highly conclusory testimony, that question and answer at 7.021 and 2.2, I think, in the appendix 263 through 266, which essentially on this issue simply plucks a phrase out from the Vitamix opinion and says, well, any other uses would be aberrant, occasional, unusual, et cetera, et cetera. And in our view, the administrative law judge was entirely within his rights to say I declined to credit that. Yeah, but you've also got that testimony, which you try to embrace and use on your side from your witness. But there's a troubling statement in that cross-examination, which has your witness conceding that that's not a mainstream use. I agree with that completely, Your Honor. But whether there be substantial non-infringing uses is something that, as to which there is a body of law that tells us how we find that out. And whether something is or isn't, quote, mainstream, is, I would suggest, not informative on that. And we've had decisions of this court, for example, reviewing survey evidence and finding that to be insufficient. Okay, I take your point. Why don't we move on to invalidity? Absolutely. What could I tell the court that would be useful on invalidity? Well, I start about motivation to combine. The Tucker says, When turned vertically downwards, the device forms a powerful tool for studying sound scattering layers in the sea. Since owing to its high resolution, it gives a great deal more information than a white beam sounder. A white beam sounder is another way of saying the kind of conical beam that is used and shown in the prior art to the A40 patent and 550 patent. And that's the exact same benefit. It's solving the exact same problem that the A40 patent says in the introductory portion of the specification that it's solving. And so, to us, that's the motivation to combine. If the patent is correct that there was a need for sonar systems that would give more information, more detailed information about what was below the boat, then you would look at Tucker and say, Tucker tells me that's one. When you turn the transducer, Tucker, vertically downwards, that's what it does. And that, therefore, is the motivation. In fact, in our view, it's hard to imagine a better correspondence between what this statement in the prior art and what the patent says is the purpose of the invention. What about the difficulty in combining? Sort of semi-teaching-away argument. Well, again, we'll come to this in the next case. In our view, if you follow the commission's construction, then Tucker is a device that meets the claim limitations, single linear downscan transducer element, and, therefore, it falls within the scope of that part of the relevant claims. And, therefore, all of these arguments about it's too complicated and it's got too many wires going into it and so on and so forth cease to be relevant. Just to be clear, it's Garman's view that under the correct claim construction, Tucker does not meet that limitation. Tucker still provides a meaningful teaching in some respects, but it's not anticipatory of any claim. But under the commission's construction, it's our view that it does meet those. It satisfies those. Just to be clear, we're talking about the other appeal now, 1572? Well, yeah, correct, yes. And the one final thing I would love to say is if the court has any questions on the 499 patent, which we've not touched on so far, I'd be happy to answer. Well, the 499 patent claim 21 discusses the individual views of both a side scan and the downscan, right? But the parent claim 1 has a requirement that the view, the rendering, be done with combined data. Is this what you were referring to just now? Correct, Your Honor, yes. But the 499 always carefully distinguishes between combined data or is it your belief you're talking about a full combination of the data or the data sitting side by side? It's individual views that are side by side. It's not individual views that are side by side. And if we look at that, Claim 19 would make that perfectly clear, that if it were individual views that are side by side, option 4 in Claim 19 would not make sense. So Claim 19 says here's a number of display options that the user can pick. One of them is side by side of the two forms of data. One of them is with the linear data, the conical data, and the combined data. If, in fact, just displaying them side by side is combined data, then... So in your view, when you have combined data, are you saying that there's images that are overlapping? You get the two images that you can have side by side and now you overlap them? Overlaying them, yes. That would be one form of combination, Your Honor, yes. It's not the only form of combination, but one form of combination is if you overlay the two images, one on top of the other. But if you just have them in separate windows on the screen side by side... So combination doesn't have to require that you combine the data in such a way where you only have one image. There's no overlay.  Thank you. Wanted to add a minute because we went a minute over. Thank you, Your Honor. Let me address that last point first on the 499 patent. The combination does not require overlay. It does not require it to be presented as an image. Figure 10 shows it side by side. The text in the specification about Figure 10 says it's an embodiment of the invention. Claim 21 makes no sense unless side by side is presenting a combination of data. The claim just doesn't make sense. Claim 21 requires it to be that side by side presentation. Mr. Bermidge pointed to Claim 19. You have to understand about Claim 19, at the top it says these are just options that the user has. It doesn't say that you're actually doing it as part of the dependency of Claim 1. It's just other options the user has. So Claim 19 is not answering the question as presented. But Claim 21 is clear. The side by side display must be a part of the claim or covered by Claim 1, the independent claim. Otherwise, 21 simply doesn't make any sense. Turning back to Tucker for a moment and the invalidity holding. We looked briefly and we were unable to find a holding that Tucker is not a phased array. And so there is no factual finding that we can find from the Commission on that front. And as Mr. Groombridge's briefs show, Garmin now concedes that it is a phased array. And as you heard, that's not part of the claim as correctly construed. And the Commission briefing shows that phased arrays are not included within the actual Commission construction that they chose. So accepting that Tucker is a phased array means it can't possibly be disclosing the linear transducer element or the linear downscan transducer element of the 550 claims. Turning finally then back to contributory infringement. First off, with respect to prospective relief, obviously once the alleged good faith reliance upon the non-infringement defense, once that's extinguished, obviously there's nothing left. And you must move forward. And that has to be contributory infringement. There is no longer any basis that one could reasonably say they did not believe that there was infringement. Again, intent, we don't believe, is the right question. If a good faith belief of non-infringement is a defense to both contrib as well as inducement, then there's no daylight any longer between knowledge and intent. And then Arrow doesn't, in my view, make sense. And Judge Rich's comments in the HP case don't make sense any longer either. Finally, as to substantial non-infringing uses, I disagree that the administrative law judge found against Navico. The way that I read the administrative law judge's determination is he laid out all the facts, and this is starting to be... I don't believe it's a contention that the administrative law judge found against you. I think that substantial non-infringing uses finding related to the hidden unit rather than the transducer. Right, so we're looking now at APPX 199 through about 202. So from APPX 199 to the top of 201, the judge recounts all the factual evidence. He says, here's what Navico said, here's what the staff said. And then he goes through and finds the things he disagrees with us for. So for hidden units, as Mr. Groombridge pointed out, there's an explicit holding that the hidden units had a substantial non-infringing use. While I don't necessarily agree with that, that's not before us. We've not pursued that issue. But the judge didn't say the same thing for the transducers. He says in the paragraphs before it, there's all these allegations that it lacks substantial non-infringing uses. And then he says, the reason I'm holding it against Navico is because I find no underlying act of direct infringement. And so to us, this is an explicit finding that all of the factors were met, all of the different elements or requirements of indirect infringement... You want to give me that page? I'm on 199, but you're saying there were findings and a conclusion by the ALJ that there were no substantial non-infringing uses? What I'm saying is that he went through all the facts and then on APPX 201 said, the reason I'm holding it against Navico is a lack of underlying direct infringement as to the transducers. And then as to the hidden units, I find against Navico because there's a lack of underlying direct infringement and a lack of substantial non-infringing uses. So he didn't reach the substantial non-infringing uses with respect to the transducers? That's not how we read it, and I don't think that's how the whole section can be accurately read. If the judge recounts all these facts that are in our favor and then says, the reason I hold it against them is no underlying act of direct infringement, we read that to be that had there been direct infringement, you'd have won. And in fact, in Garland's brief and in the commission opinion itself, it refers to the contingent finding of indirect infringement made by the ALJ, which I think tells you the state of mind of all the parties and how we read the ALJ's word. I'm over my time, so unless there's any other questions, I'll finish. We thank both sides, and the case is submitted.